IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LUCAS WOLFE | ) | |
| | ) | |
| v. | ) | NO. 3:13-cv-1158 |
| | ) | JUDGE WISEMAN |
| NANCY BERRYHILL,[1] ACTING COMMISSIONER OF SOCIAL SECURITY | ) ) ) | |

MEMORANDUM

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 23). For the reasons stated herein, Plaintiff's Motion is GRANTED.

INTRODUCTION

On August 18, 2009, Plaintiff filed an application for disability insurance benefits, alleging diabetes, hip-back injury, and severe anxiety-depression, with an onset date of January 1, 2007. Administrative Record ("AR"), found at Docket No. 12, p. 170.[2] His claim was denied initially and on reconsideration, and Plaintiff then filed a timely written request for a hearing. An Administrative Law Judge ("ALJ") held a hearing on March 7, 2012, at which Plaintiff and his wife testified, as did a vocational expert. AR, pp. 35-98.

The ALJ found that Plaintiff was not disabled under the Social Security Act ("SSA"). AR, pp. 16 and 28. The ALJ found that Plaintiff is under a disability, but a substance use disorder is a contributing factor material to the determination of disability and, therefore, Plaintiff is not disabled under the SSA. *Id.*, pp. 15-16.

---

[1] Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017.

[2] The Court cites the AR by the page numbers which are stamped in the bottom right corner of the record.

## ADMINISTRATIVE HEARING

Plaintiff's wife, Emily Wolfe, testified at the hearing that, when her husband becomes psychotic, he is delusional, hears voices and thinks that either unseen forces or someone is trying to hurt him. AR, p. 42. She stated that most of the time when he is psychotic, Plaintiff has absolutely no clue what is going on and does not even remember a lot of things. *Id.*, p. 43. She testified about Plaintiff's various medications and how they helped or did not help Plaintiff. For example, she stated that he did not do well with Haldol; he was not psychotic on Risperdal, but it had strong side effects (sleepiness and sluggishness) and he had a hard time maintaining focus; and Abilify did not control his psychotic disorder (it "just didn't work."). *Id.*, pp. 44-46, 49 and 51. She also testified that the most effective medication for Plaintiff is Risperdal and she trusts him to be alone with their children when he is compliant with that medication. *Id.*, p. 67.

Mrs. Wolfe testified that she did not think Plaintiff was using any illegal drugs at the time of the hearing and that she was not aware of Plaintiff's using any drugs other than marijuana. AR, p.62. She also testified about Plaintiff's use of alcohol, including a night when he had been drinking and attacked her. *Id.*, pp. 63-64. She stated that Plaintiff does not participate in any kind of drug or alcohol rehabilitation. *Id.*, p. 65. She testified that the reason Plaintiff could not meet the demands of a full-time job, even though he is better on the Risperdol and is not smoking pot, is because he "needs lots and lots of sleep," has a "really short attention span," and cannot "maintain the focus to follow through on things." *Id.*, p. 69.

Plaintiff testified that he graduated from high school and has credit for two college courses. AR, pp. 70-71. He testified that the last time he worked was in 2005 or 2006, as a landscape foreman. *Id.*, p. 72. He stated that the majority of the work he had done in the past 15 years was

framing houses, landscaping and brick masonry, which involved lots of heavy, manual labor. *Id.*, pp. 75-76. Plaintiff testified that he was "drinking and drugging" when he did this work and he has used marijuana, LSD and cocaine. *Id.*, p. 76. He said that the last time he smoked marijuana was about a month and a half before the hearing. *Id.*

Plaintiff testified that he drives his children to school and to their grandparents' house and drives sometimes to the grocery store and restaurants. AR, pp. 79-80. He testified that what prevents him from working now is the medication he takes, Risperdol. *Id.*, p. 80. When asked why he would not be able to perform a job like he used to (landscaping or carpentry work), Plaintiff answered:

> I don't remember ever not really having an episode at one of my jobs, where I felt like someone was messing with me or someone was having an influence and impact on my life that, you know, would lead me to thinking irrationally or to get scared. So I don't see that that would ever change even if I got a job in the near future. My attention span on the medication is not really as strong as it used to be when I was younger.

AR, p. 81.

Plaintiff testified that he was being treated for his mental impairments at The Guidance Center in Franklin, Tennessee, and medical personnel there prescribe his medications. AR, pp. 82-83. Plaintiff stated that, for fun, he sometimes went kayaking, but that, at the time of the hearing, he did not do a whole lot other than take care of the kids. *Id.*, pp. 84-85. He stated that he was "not real, real effective" with keeping his home straight and picked up. *Id.*, p. 85.

When asked why he had so many employers (27) in the past, Plaintiff testified:

> Just, I never stayed at a job long, whether it be that I couldn't handle it physically or if I mentally ran into problems with maybe someone that I worked with. I had problems with people that I worked with in the past. Sometimes I just, the redundancy of work sometimes just got to me where I couldn't handle it.

3

AR, p. 85. Plaintiff also testified about being neglected and abused when he was a child. *Id.*, pp. 86-87. He testified about having fear and anxiety, which are better on the Risperdol, and about getting sluggish in the afternoon and being really tired in the evenings. *Id.*, p. 88.

The vocational rehabilitation counselor, Gail Ditmore, testified that she had reviewed the exhibits from Plaintiff's file to familiarize herself with Plaintiff's vocational background. AR, p. 90. She testified that Plaintiff's prior jobs, landscape foreman and framer, are both heavy exertion level jobs, based on lifting and carrying things. *Id.*, p. 91.

The ALJ posed a hypothetical question to Ms. Ditmore as follows - - - assuming a person with Plaintiff's age, education and work experience who could perform somewhat between light and medium exertional work, occasionally lift and carry up to 40 pounds, frequently lift and carry up to 20 pounds, do the same amount of pushing and pulling with similar weights, stand and/or walk a total of 6 hours during an 8-hour workday and sit for up to 8 hours in an 8-hour workday, could understand and remember only simple one to-three step tasks, concentrate and persist on such tasks for two-hour periods with normal routine breaks, interact with supervisors at least two-thirds of the workday, and interact with co-workers and the general public only one-third of the workday, could adapt to limited change and could set limited independent goals[3] - - - could that person perform any of Plaintiff's former past work? AR, p. 92. Ms. Ditmore testified that the past work was not possible. *Id.* She also testified, however, that there are other unskilled occupations in the national economy that such a person would be able to perform - assemblers, cleaners and dishwashers. *Id.*, pp. 92-93.

---

[3] These limitations were taken verbatim from the assessment of a non-examining medical consultant. AR, p. 429.

Plaintiff's counsel changed the hypothetical question to add the following limitations: interruptions caused by psychologically based symptoms and an unreasonable number and length of rest periods for at least 10% of the time. Ms. Ditmore responded that no work would be possible with those added limitations. AR, p. 94. Similarly, when Plaintiff's counsel added limitations for 10% of the time in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, Ms. Ditmore said that no work would be possible. *Id.*, pp. 95-96. Plaintiff's counsel posited that the hypothetical person also had "marked" limitations[4] in the ability to maintain attention; marked impairment in the ability to work in coordination with or in proximity to others without being unduly distracted; marked limitation in the ability to accept instructions and respond appropriately to criticisms from supervisors; marked limitations in the ability to get along with co-workers and peers without unduly distracting them or exhibiting behavioral extremes; marked limitation in the ability to respond appropriately to changes in a routine work setting; and the need for rest periods one to two and a half hours a day, at least two or three days a week.[5] With each limitation, Ms. Ditmore answered that no work would be possible. AR, pp. 96-97. Ms. Ditmore also testified that a marked limitation in one's ability to concentrate and persist, caused by medication sedation, would also preclude the jobs she had identified that Plaintiff could perform. AR, p. 97.

---

[4] A "marked" limitation is defined as a condition where the ability to function is severely limited but not precluded. AR, p. 96.

[5] These limitations were taken from the assessment of the only two examining psychologists, Terrell and Scott. AR, pp. 760-61.

## THE FIVE-STEP INQUIRY

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

Moreover, disability under the Social Security Act means not simply that the individual is unable to perform his previous work, but that he cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A). In addition, an individual shall not be considered to be disabled for purposes of determining disability if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. 423(d)(2)(C).

In determining disability, the SSA and the ALJ consider a five-step sequential evaluation process. The Sixth Circuit has described these five steps as:

(1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

(2) A claimant who does not have a severe impairment will not be found to be disabled.

(3) A finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations (the "Listings"). Claimants with lesser impairments proceed to step four.

(4) A claimant who can perform work that he has done in the past will not be found to be disabled.

(5) If a claimant cannot perform his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).

An extra step is required if a claimant is disabled and suffers from alcoholism or drug addiction. In such a case, the SSA must determine whether the alcoholism or drug addiction is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). If it is a material factor, the claimant is not disabled as defined in the SSA. *Lightfoot v. Astrue*, 2011 WL 4431183 at * 2 (N.D. Ohio Sept. 22, 2011). The key factor in determining whether alcoholism or drug addiction is a contributing factor material to the determination of disability is whether the SSA would still find the claimant disabled if he stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). *Lightfoot* at * 2. If the claimant's remaining limitations would be disabling, then the claimant must be found disabled regardless of the alcoholism or drug addiction. *Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005).

ADMINISTRATIVE DECISION

The ALJ in this case made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.   The claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.

3.   The claimant has the following severe impairments: schizoaffective disorder; impulse control disorder; alcohol dependence; and cannabis dependence.

4.   The claimant's impairments, including the substance use disorders, meet sections 12.03, 12.04, 12.06, and 12.09 of the Listings.

5.   If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6.   If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments in the Listings.

7.   In the absence of alcohol and substance abuse, the claimant would have the residual functional capacity to perform medium work, except that he would be limited to occasional lifting and carrying of up to forty pounds, frequent lifting or carrying of up to twenty pounds, pushing and pulling with similar weights, standing and/or walking for a total of six hours in an eight-hour workday, and sitting for up to eight hours in an eight-hour workday. Additionally, the claimant can understand and remember only simple, on-to-three step tasks; concentrate and persist on such tasks for two-hour periods of time with normal, routine breaks; interact with supervisors for at least two-thirds of a regular workday, i.e., on a frequent basis; interact with coworkers and the general public

for only one-third of a workday, i.e., on an occasional basis; adapt to limited change; and set limited, independent goals.

8. If the claimant stopped the substance use, the claimant would be unable to perform his past relevant work.

9. The claimant was born on March 10, 1973, and was 31 years old, which is defined as a younger individual.

10. The claimant has at least a high school education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

12. If the claimant stopped all alcohol and substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

13. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use. Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

## STANDARD OF REVIEW

This court's review of the ALJ's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the ALJ and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If substantial evidence supports the ALJ's decision, the court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

The court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). The court has the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

## ANALYSIS

The primary dispute in this matter is whether there is substantial evidence in the record to support the ALJ's determination that Plaintiff is not "disabled" absent his alcohol and drug dependence. As noted, the ALJ found that Plaintiff had four severe impairments which met the Listings. The ALJ also found that, in the absence of substance abuse, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities. The ALJ found, however, that in the absence of alcohol and substance abuse, Plaintiff's impairments did not meet the Listings and Plaintiff would have the residual functional capacity to perform medium work.

Plaintiff contends that the ALJ erred in the relative weight he gave to the opinions of a non-examining state agency psychologist, Calway-Fagen, and the only two psychologists who actually examined Plaintiff, Terrell and Scott. The SSA has promulgated regulations for the agency to use in

evaluating medical evidence and opinions. For example, the agency is required to evaluate every medical opinion it receives. 20 C.F.R. § 404.1527(c). Generally, the agency gives more weight to the medical opinion of a source who has examined the claimant than to the medical opinion of a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1).

Calway-Fagen did not examine Plaintiff. She made her assessment based on medical records[6] on February 25, 2010, more than two years before the ALJ's hearing. She found: Claimant can understand and remember 1-3 step tasks; Claimant can concentrate and persist for the above tasks for 2 hour periods in an 8 hour day with routine breaks; Claimant can interact with supervisors at least 2/3 of a regular workday and with co-workers and the public 1/3 of a workday; and Claimant can adapt to limited change and set limited independent goals. AR, p. 429. She found that Plaintiff was not "markedly" or "extremely" limited in any category of her assessment. *Id.*, pp. 427-28. Calway-Fagen's report (AR, pp. 413-429) does not indicate whether her assessment assumed alcohol and/or drug use or did not assume alcohol and/or drug use. It simply does not say. There is no opinion in Calway-Fagen's report concerning the effect of alcohol or substance abuse on Plaintiff's limitations. She does not establish a causal connection between alcohol or marijuana and Plaintiff's alleged disability.

Terrell and Scott personally examined and tested Plaintiff four times - on September 23 and 25, 2010; November 4, 2010; and October 19, 2011. AR, p.745. They administered 13 different tests to Plaintiff. *Id.* On the Minnesota Multiphasic Personality Inventory ("MMPI"), Plaintiff demonstrated "extreme pathology." *Id.*, p. 753. "Patients with this type of extreme elevation MMPI-2

---

[6] Plaintiff points out that Calway-Fagen did not have all of Plaintiff's medical records to review. She certainly did not have as many as Terrell and Scott did later.

profile are incapable of handling normal-range situational stressors - and certainly incapable of handling more extreme stresses without break-down of normal mental and emotional controls." *Id.*, p. 755.

Terrell and Scott found that Plaintiff was experiencing an under current of PTSD maladjustment issues which were severe and which can "tremendously impair his ability to function with the general public or pursue and retain full-time employment." AR, p. 755. In addition, they found that Plaintiff suffers from very severe psychotic intrusions "which adversely affect his ability to think clearly, remember accurately, concentrate and complete tasks, and maintain normal social interaction." *Id.*, pp. 745-46.

Terrell and Scott made the following diagnosis: Schizoaffective Disorder, Impulse-Control Disorder, Post-Traumatic Stress Disorder, Chronic; and History of Cannabis Abuse. AR, p. 759. They also found Borderline Personality Disorder, severe-active psychosis, paranoia, delusions, severe distortions of reality, history of rage outbursts, and multiple recent episodes of irrational instability, leading to protective separation from children. *Id.*

Terrell and Scott found Plaintiff to be "markedly" limited in the ability to maintain attention for extended periods of two hour segments, the ability to work in coordination with or in proximity to others without being unduly distracted by them, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in a routine work setting. AR, pp. 760-61. They found Plaintiff to be "extremely" limited in the ability to complete a normal workday and work-week without interruptions from psychologically based symptoms, the ability to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to get along with coworkers and peers without unduly distracting them

or exhibiting behavioral extremes. *Id.* Although Terrell and Scott mention Plaintiff's alcohol and marijuana dependence, they do not indicate whether their assessment was conducted while Plaintiff was drinking and/or on drugs or not. Terrell and Scott state no opinion as to the effect of alcohol and marijuana on Plaintiff's limitations.

The ALJ's assumption that Plaintiff was using drugs at the time he was tested by Terrell and Scott is speculative. The ALJ bases his assumption on the fact that treatment records from The Guidance Center indicate that Plaintiff reported smoking marijuana on a daily basis *only a couple of months after he completed the personality profile* with Terrell and Scott. AR, p. 21. This alleged statement by Plaintiff is not medical evidence; neither is it substantial evidence that he was taking drugs at the time of the Terrell-Scott assessment or at the time the MMPI was given to him. The ALJ's speculative statement that there is no indication in the record that Plaintiff was *not* using drugs at the time of testing is also not medical evidence or substantial evidence that Plaintiff's limitations were caused by his alcohol or drug abuse. We simply do not know.

An ALJ must identify at least some medical evidence supporting the conclusion that a claimant no longer would be disabled if he or she stopped drinking or taking drugs. *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 700 (W.D. Pa. 2002). In addition, an ALJ may not make speculative inferences from medical reports and may not reject a treating physician's opinion based on speculation or lay opinion. *Id.* If an ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise acknowledged disability, the claimant's burden has been met and an award of benefits must follow. *Mathious v. Barnhart*, 490 F.Supp.2d 833, n. 18 (E.D. Mich. 2007). In other words, on the issue of the materiality of alcoholism, a tie goes

to the claimant. *Id.* (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003)); *see also Davenport v. Comm'r. of Soc. Sec.*, 2012 WL 414821 at * 10 (E.D. Mich. Jan. 19, 2012).

The ALJ's basis for evaluating the effects of alcohol and substance abuse on Plaintiff's disability is not clear. None of the medical records identified by the ALJ sufficiently addresses whether Plaintiff would remain disabled if he stopped his alcohol and drug abuse. For example, the ALJ cites to a function report completed by Plaintiff, which is not a medical record, but that report does not say whether Plaintiff was on or off drugs and alcohol. AR, p. 23 (citing Ex. 3E). The ALJ also cites to Plaintiff's testimony concerning his daily living activities, which again is not medical evidence, but there is no mention as to whether Plaintiff was off drugs or alcohol in this testimony. *Id.* In finding that Plaintiff would have only moderate difficulties with concentration, persistence or pace, the ALJ again cited to Plaintiff's function report, which was completed by Plaintiff and is not a medical record.

The ALJ states numerous times, with no citations to the record, that Plaintiff was able to perform substantial gainful activity in the past while sober. AR, pp. 22, 24 and 26. But the ALJ specifically asked Plaintiff whether he was "drinking and drugging" when he did that work, and Plaintiff answered "yes." *Id.*, p. 76. Moreover, the record shows that Plaintiff lost job after job and worked for 27 different employers during the last 15 years he worked. *Id.*, p. 85. The history given to Terrell and Scott indicates that Plaintiff began abusing alcohol when he was 15 years old and began smoking marijuana when he was 16. *Id.*, p. 758. There is no basis for the ALJ to have stated that Plaintiff was sober when he worked in the past.

The ALJ also relies heavily on various Global Assessment of Functioning ("GAF") scores to find that Plaintiff was not disabled absent drugs and/or alcohol. And yet, while the medical

evidence does indicate that Plaintiff's GAF scores were, at times, low when Plaintiff reported current use of alcohol and/or drugs (AR, pp. 556 and 558, *e.g.*), the medical evidence also reflects higher GAF scores when Plaintiff was using alcohol and/or drugs. *See, e.g.,* AR, pp. 561 and 564. Conversely, the medical records indicate that Plaintiff was seen at the Williamson County Medical Center ER in December of 2006 for psychosis, psychotic delusions and paranoid schizophrenia, and his drug screen at that time was negative for street drugs. AR, pp. 384-394. Similarly, Plaintiff was seen again at the ER in August of 2007 for psychosis, and his drug screen again was negative for street drugs. AR, pp. 364-374.

The ALJ, in discussing the opinions of Terrell and Scott, states that although these two professionals found that Plaintiff had some marked to extreme mental limitations in the areas of social functioning and concentration, persistence or pace, their then current GAF score *may have been* another indication of the impact of drug use on Plaintiff's psychological symptoms. AR, p. 21. "May have been" is the ALJ's speculative opinion, not medical evidence. And Terrell and Scott, the medical professionals do not say that Plaintiff's symptoms were exacerbated by drug and alcohol use or to what extent.

The ALJ states that Plaintiff suffered from *alcohol and drug-induced* schizophrenia and anxiety and depression magnified by polysubstance abuse. AR, p. 19. There is no citation to any medical evidence in the record to support this statement that Plaintiff's mental illness was alcohol and drug-induced and the court can find no such medical evidence establishing this causal connection.

An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. *Tagger v. Astrue*, 536 F.Supp.2d 1170, 1180-81 (C.D. Cal. 2008).[7] Rather, the ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician. *Id.* at 1181. The ALJ is not a medical expert and cannot by his legal expertise discount and reject the medical findings and conclusions of the physician. *Mathious v. Barnhart*, 490 F.Supp.2d 833, n. 14 (E.D. Mich. 2007).[8] Here, the assessment of the only examining physicians does not reflect anything about the effect of drug or alcohol use on Plaintiff's test results or functioning.

It is also important to differentiate between Plaintiff's alcohol and marijuana abuse and Plaintiff's reactions to the medications prescribed for his psychosis. At the hearing, Plaintiff's wife testified that Plaintiff did not have delusional thoughts when on medication, and Plaintiff reported to Volunteer Behavioral Health Care System that he was feeling extremely stable with his current medications. There is no clear evidence in the record concerning the interplay between Plaintiff's prescribed medications and any drug or alcohol abuse. The ALJ's findings that Plaintiff improved with medication (AR, p. 24), therefore, is not a finding concerning alcohol and drug abuse. The ALJ's comments on Plaintiff's improvements when given Celexa, Risperdal and Abilify (AR, p. 20) have everything to do with prescribed psycotic medications, nothing to do with alcohol or marijuana.

---

[7] "ALJs must not succumb to the temptations to play doctor and make their own independent medical findings." *Lightfoot*, 2011 WL 4431183 at * 7.

[8] The causal relationship between a claimant's limitations and his substance abuse is one that requires some expertise to make. *Mathious*, 490 F.Supp.2d at 849.

In his hypothetical question to the vocational expert at the hearing, the ALJ credited the non-examining physician's assessment over that of the examining physicians. The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician.[9] *Ingram v. Barnhart*, 72 Fed. Appx. 631, 634 (9th Cir. 2003). The ALJ here stated that he was giving "heavy weight" to the assessment of Terrell and Scott, AR, p. 22, and yet his question to the vocational expert did not include the limitations found by Terrell and Scott. When Plaintiff's counsel added the limitations found by Terrell and Scott, the vocational expert stated that someone with those limitations would be unable to find work. And, once again, the vocational expert was not told to assume substance abuse or not, and she gave no opinion as to the effect or causal connection between alcohol or marijuana and Plaintiff's limitations.

Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies. *Gobert v. Astrue*, 2014 WL 31254 at * 12 (W.D. La. Jan. 3, 2014) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). Therefore, the hypothetical question must include all those impairments that are substantially supported by the record as a whole. *Id.* at 1278-79. Here, the court finds that the hypothetical question of the ALJ was incomplete, and the hypothetical questions of Plaintiff's counsel accurately stated the limitations Plaintiff experienced. Therefore, the ALJ should have found that Plaintiff was unable to do work in the current economy.

---

[9] The court gives little weight to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient. *Gonzalez v. Colvin*, 2016 WL 871341 at * 6 (S.D. Miss. Feb. 17, 2016).

Finally, the ALJ's decision that substance abuse was the actual cause of Plaintiff's most severe limitations is not supported by substantial evidence in the record. No medical evidence establishes this causal connection.

In light of the deficiencies identified herein, the Court cannot find that substantial evidence supports the ALJ's unfavorable decision. Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 23) is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision REVERSED, and this case is REMANDED to the Social Security Administration for further administrative proceedings consistent with this factual findings and legal conclusions drawn in this opinion. An appropriate Order will enter.

IT IS SO ORDERED.

THOMAS A. WISEMAN, JR.
SENIOR U.S. DISTRICT JUDGE